Mr. Bouras v. Holder, Mr. Bratton. May it please the Court, I'm Scott Bratton. I represent the petitioner Mohamed Bouras in this case. The issue in front of the Court is straightforward. Mr. Bouras contends that the immigration judge abused his discretion. Could you keep your voice up, please? Yes. Mr. Bouras contends that the immigration judge abused his discretion in this case by denying his request for a continuance to allow his ex-wife's appearance in court to testify. We would submit that the denial in this case was made without rational explanation. The issue in the case before the immigration court was whether Mr. Bouras could establish by a preponderance of the evidence that his marriage was entered into in good faith. So a key part of that would be the testimony of his ex-wife who intended to come to court and could not. Did anyone suggest that if the immigration judge would have difficulty squeezing a continuance into his busy schedule that he just could have called her? I don't think telephonic testimony was something that came up in the immigration court proceedings. We've had cases in the past where the immigration judge would call up an expert witness, for example. And no one objected. It would be irregular in a district court proceeding, but there are no particular formalities for the immigration court. It was important for your client to hear from his ex-wife, so why not say to the judge, if you don't have time for a hearing, couldn't you just speak to her on the phone? It wasn't something that was suggested in the case. Whose responsibility is that? Well, I mean, I think in this particular situation, Bouras could have suggested that. Now, whether that was going to work would be problematic for a couple of reasons. Number one, due to her work issues, it sounded like she wasn't going to be able to take that kind of block of time out. Well, that raises a more fundamental question about whether some accommodation could be made. There was a year's notice for this hearing, right? And she said when she advised the court that she couldn't come, that she had only recently learned of the date of the hearing and couldn't change her schedule. So why was she not notified until the very last minute? That's unclear from the record. It's also unclear because it was never addressed in the immigration court proceedings when she actually learned. Because the fax does say she just learned of the hearing. Does just learn mean a month ago or a week ago? So it isn't clear from the record, and that wasn't an issue that was brought up in the immigration court case. So I'm not sure, but it doesn't look like from her fax that it would have made a difference had she known a year in advance or a week. Well, yes, because she's saying that she got late notice and couldn't change her work schedule. That's why she couldn't be present. Well, they had staffing shortages where they only had two people in our unit. And she was forced to train someone for the next six to eight weeks. The bottom line is if there had been sufficient notice to her, perhaps some accommodation could have been made, and it wasn't. And the motion for a continuance didn't come until the very end of the hearing after the claimant had testified. Everybody knew that she was going to be a key witness. The only issue is the bona fide nature of this marriage. Yes, and Mr. DeFranco, the counsel for Mr. Boris, did raise – it did bring it up at the start of the proceeding that she was not going to be available, that he had received something. And then at the end, after Mr. Boris testified, he stated that she wasn't going to be able to come. Can I have a continuance to secure her testimony? Maybe that's not how I would have done it, but that's how it happened in the case. That's what the record suggests, but in looking at the immigration judge's decision, the immigration judge's decision is essentially that he states, I don't continue cases set for a final hearing except for an emergency. And then he goes on to state that – Did he say he didn't have time, or did he just say he had a policy? He said that he does not continue cases set for a final hearing except for an emergency. And then he goes on to state if she can't come to court because of work, then she's not able to come to court, indicating that that's not going to ever be the case. Did he give a reason for his rule? He doesn't grant a continuance unless there's an emergency? Did he say, I'm too busy, you know? He didn't say anything. Immigration judges have extraordinarily heavy caseloads, don't they? They have significant caseloads, yes. And he had set this time aside a year earlier for this hearing to resolve this issue, right? Correct. And Mr. Borras' counsel had known five days ahead of time that the ex-wife wasn't going to be there, right? That's correct. And didn't ask for a continuance until the very end of the whole hearing, right? That's correct. I've got to say, I find the immigration judge's impatience understandable. I do want to address that, and I addressed it in the briefs, but I do want to address that particular point that Mr. DeFranco did find out five days before the hearing. Had he put in a request for a continuance, his office is in Columbus, it would have been submitted via Federal Express and best case scenario received four days before the hearing. Assuming it makes it to the court that day, which is assuming a lot when you're dealing with immigration court and filings, that would have been four days. The government gets ten days under the practice manual to respond, so this issue could have been addressed. Everybody, when things come up at the last minute, you can do phone calls, right? Phone calls to whom? The court or DHS? And counsel, yes. I mean, you could attempt to contact chief counsel, and again, that's assuming they're going to contact you back when you call them, which isn't always the case. But in any event, they are obviously going to oppose the request. They did. I mean, they didn't agree to the request. Not at the end of the hearing, no. Well, I mean, I understand. And this approach sort of maximizes the waste of time, right? I mean, again, this isn't how I would say I would have done it, but under the circumstances, had Mr. DeFranco sent the document to the court, that's still only four days in advance of the hearing. The judge isn't going to continue the case. What he's going to do is he's going to hear at least the testimony of the respondent in this particular case, Mr. Boras. Then he can set it over if he determines that the evidence isn't sufficient. Right. This has the air of a Hail Mary pass, right? After Mr. Boras' testimony, and there are the various problems with the tax returns and all kinds of problems developed during his testimony, the request for a continuance to bring in a witness to rescue the case after it's all over looks pretty desperate. Well, I would disagree that there were a whole lot of problems there. I think his testimony was consistent with the documentation with respect to the bona fides and the marriage. There was an issue with the tax returns as they weren't signed. Mr. Boras testified that his wife handled that since she would have been the perfect person to testify. Didn't show any of his income, right? They did not show any of his income. Which is what you would expect if the couple were combining their finances and living together. It looks to me like he was stating he was unemployed on those taxes and not declaring any income on any tax return. At least that's the way that I read the record. One last point I want to briefly address, which is another troubling portion of the Board's decision, and that's with respect to the Board's incorrectly states that Mr. Boras' ex-wife did not state whether she could provide testimony at a future hearing. In fact, that's contradicted by the facts that's contained at page 140 to 6 of the administrative record. She states, I am hoping we can get a continuance to this hearing date so I am able to attend the hearing for Mohamed. So she's clearly indicating that she wants a continuance so that she can appear. That directly contradicts the Board's decision and one of its main grounds for denying the request or finding that there was not good cause for the request for a continuance was she didn't state that she would be available at a future hearing date by telephonic testimony or in person when, in fact, the facts indicate that she did state that. What was that, page 146? What is it? That's the facts. Is it her testimony? Is it somebody else's account of a phone call with her or what? No, it's her facts to Mr. DeFranco that was submitted to the court. The facts, okay. Okay, a facsimile, I misunderstood. Yes. Thank you. Okay, thank you, Mr. Bratton. Mr. Sherman? Ms. Sherman? Good morning, Your Honors. Jessica Sherman on behalf of the respondent, Eric Holder. Now, is it your proposition that this was a fraudulent marriage or a failed marriage? The issue is whether he showed his marriage was bona fide. Now, answer my question. Is this your position it's a fraudulent marriage or a failed marriage? A fraudulent marriage. Doesn't matter if it's a failed marriage, right? If it was a failed marriage but entered into with the intent to be a bona fide marriage. Now, what's the evidence it wasn't? Now, what's your argument, that he paid her to marry him? No, Your Honor. I think that the evidence before USCIS, which is not before this court, it's not on review here, is that he entered into the marriage to obtain immigration benefits. However, the denial of the good faith marriage waiver is not reviewable under… Look, there's nothing wrong with that. That's not fraud. If you go up to someone and say, look, I'd like to marry you, and, you know, frankly, I really need to get married, and she says, well, okay, I mean, you're a nice person, don't have a husband, so I'll marry you. That's not fraud. The standard for a bona fide marriage is whether the party is intended to establish a life together. Yes, when you can establish, you can intend that, even if your motive is to get citizenship, right? The immigration… Look, don't interrupt me. If you say to a woman, look, I want to get married, I need to get married because I want to stay in the United States, but I really like you, and we'll have a great marriage, we'll have kids, and so on, but I'm being candid with you that one of my motives is to stay here. Now, I don't see what fraud or impropriety there is in that. If the purpose of the marriage is solely to obtain immigration benefits… It's not solely in my example, right? But that's not the issue before the court stands. Well, that's the question. What do we know about why he wanted to marry her? I don't understand it. He apparently wanted to marry, wanted to move to her state, you know, and operate a hot dog stand, and he didn't get the right lottery tickets, so the hot dog stand was a flop. He did try to operate the hot dog stand. If it had been a success, presumably, he would have remained, right? What's the evidence to contradict that? They didn't commingle assets. They didn't establish a life together. Some of the spouses don't commingle assets, so why is that such a big deal? Look, the cases we've had in the past are cases in which the immigrant pays for a phony marriage with the understanding they're going to get divorced, right? I don't see what the evidence is here that it's anything but a failed marriage. There is no requirement in the INA that money is exchanged in order for it to be a fraudulent marriage. You just said we're talking about fraudulent marriages, right? Now, the fraud could be deception. He says, I'm in love with you, but actually intends to divorce her in six months, right? Well, what's the evidence of that? The evidence is, I mean, his burden to show that they intended to establish a What is the evidence that when he married her, he was intending to dissolve the marriage because his only purpose in marrying her was to get citizenship? In the short period of time that they were married, they spent very little time together. I know, but there's reasons for it, like his hot dog stand. It was a failure because he didn't get a high enough lottery ticket. And there was the price, a cab driver, but he'd have to wait a year, you know, in order to be able to drive a cab after he got his license in her state. So there are reasons. So I don't understand what the contrary evidence is. It's his burden. That they fudged their taxes like 50 million other people? There's no evidence they shared assets and liabilities, that they were joining a life together as a married couple, and it's his burden of pride. What do you mean joining a life together? They were getting married, and he was going to move there, but he had problems with the hot dog stand and then with his cab license. So I don't see what the Even if it's not the strongest case of marriage prejudice I don't see what your evidence. It's not the issue before the court today. As I say, in the previous cases we've had, it's perfectly clear. You know, it's a commercial deal. Is there any evidence that he paid her anything to marry him? There is no requirement that money is exchanged for proof of a fraudulent marriage. Well, you've got to have some sort of evidence. I don't see what your evidence is. The evidence is that they did not commingle assets. Oh, look, a lot of people don't commingle assets. I don't understand that. Ms. Sherman, is it correct that the only issue before us is whether the denial of continuance was an abuse of discretion? Yes, Your Honor. A denial of what? A continuance. And why was it not an abuse of discretion in your view? Mr. Boris was notified of his hearing date seven months in advance of the date. He did nothing to secure his ex-wife's testimony until five days before the hearing. When he was notified that she would be unable to attend, he did nothing and just attended court five days later. So why didn't the immigration judge just call her? He never requested that she appear telephonically. It's his burden of proof. He knew that this evidence was essential. Well, why doesn't the immigration judge think of it himself? I mean, doesn't he realize this is a serious case, this person being denied citizenship, and the evidence from the wife is important? We've seen in the past where immigration judges, because they are very pressed for time, they'll get on the phone with a witness. He didn't request the continuance until the close of his testimony. Why doesn't the immigration judge do it on his own? Doesn't he have any sense of responsibility? The facts didn't say that she would be able to. And what is this business of having a rule that he never grants a continuance if there's been a hearing? What's that about? The facts from his ex-wife didn't say that she would be available for a telephone. Where does that rule come from? Is that something in your manual for immigration judges? What good cause means is different a year before the hearing, five days before the hearing. You're not answering my question. Apparently he has a rule. Now, what's the source of this rule? It's his understanding of what good cause means when you request a continuance at the close of testimony at the end of the hearing. In that case, if there was an emergency, he certainly would have granted it. Why isn't this an emergency? This is a key witness for the immigrant. Because he didn't diligently pursue his rights, and five days before, this might have been considered a ground to continue proceedings. But he waited. Well, what's the fussing about this? Yes, it's not well presented. The immigration bar suffers from many of the problems of the immigration court. It's not a lucrative practice. So why does the immigration judge take some minimal responsibility, trying to do justice, and pick up the phone? She didn't state that she would be available for telephonic testimony, and he didn't request it. He knew that her testimony was part of his evidence, and he knew he carried the burden of proof. Look, he screwed up. There's no question about it. And it's his burden of proof. The question is whether these immigration judges feel any sense of responsibility. He didn't have a feel. Or whether they just, you know, play, you know, gotcha. The immigration judge wasn't. Waited too long? Too bad. Off you go to Algeria. The immigration judge wasn't provided with a phone number or a schedule that he could reach Ms. Schreiner for her testimony. Well, couldn't he say, look, I want to talk to her on the phone. Would you give me her phone number? He wasn't told that she would be available for testimony. And it was Mr. Boris's. Honestly, why doesn't he ask? Why doesn't he say, look, it's too late to have a continuance. I'm all booked up. But it's your key witness. So, look, give me her phone number and tell me when I can call her. And, you know, tell her I'm going to call her and, you know, I'm going to ask her some questions. The immigration judge had a busy docket. I mean, this isn't her. Busy to make a phone call? There was no evidence that she was even available to answer the phone. Yes, but, of course, that would be very telling. Suppose he says to the lawyer, I'd like to speak to her. So, would you give me the phone number and tell me when I can call her? And he says, well, actually, you can't call her because she's not going to pick up the phone. She's too busy. Then the immigration judge could say, look, these people are playing games with me. You know, I've had enough, so you're out. Mr. Boris bore the burden of proof, and he had to diligently pursue his rights. This court has recognized in the DAME that when an alien doesn't diligently pursue their case. Continuing technicalities and not seeing that there's a very sensible, practical solution here, which the immigration judge didn't think of. As our honors have noted, that telephonic testimony is rare, and he needs to request it so that the device is there. So it's rare. So what? Who knows if the courtroom was equipped at that last second moment to take telephonic testimony that would then be recorded in part of the transcript in the immigration proceedings. If they didn't have the recording devices to establish that the telephone would be then recorded as part of the transcript, it would be improper that this testimony would be taken and not recorded as part of the transcript before the immigration court. If he had made the request five days in advance and said, can my ex-wife testify telephonically, they could have brought in whatever is required to take telephonic testimony. But when he makes it at the close of his merits hearing without any explanation why she wasn't notified sooner and arrangements were made for her testimony, then he hasn't demonstrated good cause for continuance. He had seven months to obtain her testimony or make arrangements for her to present it telephonically or through an affidavit, and he did nothing. Under these circumstances, he hasn't established good cause. Okay. Well, thank you very much, Ms. Sherman. So, Mr. Bratt, does he have any time? One minute? Yeah. Just briefly, with respect to the government's position that it's a fraud marriage, that's contrary to what the judge said when he stated that I'm not reaching a conclusion, the respondent's marriage is a sham. That's at page 140 of the administrative record. The immigration judge in this case didn't say that he denied the request for continuance because of the timing of the request. It was denied because he stated, I don't grant these requests at any time after the trial's set unless there's some sort of emergency. If she can't come to work, then she's at work and she can't come to court. Why is that unreasonable for somebody managing a busy docket? This is someone's only chance to have a review of his case. It would have been easy to either telephonically contact the person or set the case aside for a one-hour time slot to have her testify in the future. Every immigration court I've ever been to, including the Chicago court, is equipped to take telephonic testimony. And in a case, the telephone is sitting on the judge's desk and I've done telephonic testimony. Mr. Bratton, one of the things that seems to be epidemic in immigration practice is delays and stalling. And if we say an immigration judge doesn't have discretion to deny a continuance in this kind of case, it seems to me, tell me if I'm wrong, but that would really be an invitation to a whole new level of game playing. Well, each case has to be looked at on its facts. And in this particular case, certainly, there was no delay tactic or anything like that. Mr. Boris would want to have his case heard. Well, of course, I know that's the story. But if that's true, then why wasn't there more of an effort to get her there first or to make even some last-minute arrangements? Well, the record isn't clear on what efforts were made and when they were made, and that's because the judge in three sentences denied the continuance request and basically said this isn't going to happen because if she can't come because she's at work, then I'm not going to grant the case. I'm not going to grant the continuance. She can't come. This discussion was not had. It would have been simple to bring all of this up to see what efforts were made, but in looking at the reasons given by the board and the IJ and denying it. Yes, it would have been very simple to do that at the beginning of the hearing. Well, Mr. DeFranco did bring it up at the beginning of the hearing that she was unavailable. Right, but he didn't explain and ask for a continuance then. He didn't ask for an accommodation like a phone hearing. He didn't ask for anything until everything was over. Until Mr. Boris' testimony was over. So to put the onus on the judge to sua sponte develop the record would create a new rule. No, I'm not putting the onus on the judge to create the record. That's exactly what you're doing. What I'm saying is that no record was created because he simply said this isn't going to happen. It wasn't because of the timing of the request. It was because he asked for a continuance after the case had been set for trial. That's the basis. He says if it's a work issue, I'm not going to grant a continuance after the case has been set for trial. That's clearly what the judge is saying in his three or four sentences that he's dealing with the request. So I would submit that it is an abuse of discretion and that the case should be remanded back to the agency. Okay, well thank you very much, Mr. Bratton, and thank you, Ms. Sherman. Next case for argument.